UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDI D.,<br><br>        Plaintiff,<br><br>    v.<br><br>SSA, et al.,<br><br>        Defendants. | Case No. 24-cv-08207-RFL<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 11, 15 |

Claimant Wendi D. seeks review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Agency") denying her application for disability insurance benefits under Title II of the Social Security Act. Wendi D. filed a motion to for summary judgment (Dkt. No. 11) and the Commissioner filed a cross-motion for summary judgment (Dkt. No. 15). Having considered the parties' briefs and supplemental submissions, the relevant law, and the record in this case, the Court finds that the Administrative Law Judge ("ALJ") denial of benefits was not supported by the record. Therefore, Wendi D.'s motion for summary judgment is **GRANTED** and the Commissioner's cross-motion for summary judgment is **DENIED**.

**I.  BACKGROUND**

On October 5, 2020, Wendi D. filed an application for Social Security Disability Insurance ("SSDI") benefits, alleging a disability beginning August 30, 2020, based on a combination of impairments including degenerative disc disease of the cervical and lumbar

spine, bipolar disorder, and anxiety. (Tr. 251, 253–54, 277.)[1]  Wendi D. alleges that the onset of her disability stems from a motor vehicle collision on February 27, 2020. (Tr. 566.)  The following day, Wendi D. was treated in an emergency department for neck pain that had gotten worse overnight. (*Id.*)  Over the next few months, Wendi D. had several follow-up visits for treatment because she continued to experience neck and back pain, and was referred to physical therapy. (Tr. 552–54.)

On April 11, 2020, a cervical MRI showed that Wendi D. had a protruding herniated disc at C3-4 causing stenosis of the central canal with compression of spinal cord, a herniated disc at C4-5 causing stenosis of the central canal, and a disc bulge at C5-6. (Tr. 560–61.)  A lumbar MRI showed an L4-5 protruding herniated disc causing central canal stenosis with thecal sac compression, neural foraminal stenosis with nerve compression, and a protruding herniated disc at L5-S1 with tearing of the anulus contributing to central canal stenosis. (Tr. 558–59.)  On May 14, 2020, Wendi D. was reevaluated at her treating doctor, Joseph Shaughnessy's office, due to her continued lower back pain, muscle spasms, and neck pain with headache and neck stiffness. (Tr. 540.)  The medical visit report indicates that Wendi D. exhibited a slow gait and limited range of motion in the thoracic spine, accompanied by pain to palpation in the neck, mid-back, and lower back regions. (Tr. 541–42.)  During this time, Wendi D. had been attending physical therapy sessions three times per week and was recommended to abstain from her work for three months. (Tr. 527–28.)

Wendi D. received further evaluation by the Institute of Florida Pain Specialists for cervical spondylosis from June 9, 2020, to June 15, 2020. (Tr. 729.)  During one of these visits, Wendi D. received a cervical spine facet injection, which appears to have provided pain relief for approximately 24 hours. (Tr. 645, 679.)  Wendi D. continued to experience pain after her injection, stating that her pain spiked to more than 6 out of 10 along with tenderness to palpation and muscle spasms along her neck and spine, limiting her activities of daily living. (Tr. 679,

---

[1] All citations to "Tr." refer to the Court Transcript Index Page Nos. (*See* Dkt. No. 10-2.)

2

681.) At an appointment for anxiety medication refill on August 17, 2020, Wendi D. indicated that she was experiencing neck and back pain. (Tr. 600.)

Wendi D. resigned from her nursing job due to her pain and physical limitations in August of 2020, after three months on short term disability. (Tr. 210, 284.) Wendi D. reported becoming homeless after losing her job, and living in an RV, first in Florida and then in California starting in January 2021. (Tr. 116, 210.) Wendi D. was required to move her RV every two to three weeks due to local parking restrictions. (Tr. 116.) The record indicates that, because she was homeless, was constantly moving, and did not have medical insurance, Wendi D. encountered significant challenges in accessing medical care. (*See*, *e.g.*, Tr. 284.) There are no records of Wendi D. receiving medical care between September 2020 and February 2022.

Wendi D. reestablished medical care in February of 2022, with Dr. Marie Grageda. (Tr. 809.) Dr. Grageda's first assessment noted that Wendi D. was experiencing lower back pain and back muscle spasms, among other conditions. (Tr. 809–10.) In August of 2022, Dr. Grageda noted that Wendi D. continued to have ongoing neck and lower back pain and referred her to an orthopedic surgeon and physical therapy. (Tr. 795–96.) Dr. Morteza Farr, an orthopedic surgeon, evaluated Wendi D. on October 5, 2022. (Tr. 832.) Wendi D. reported to Dr. Farr feeling pain and light-headed when turning her head left, and had radiating pain towards her upper and lower extremities. (*Id.*) Dr. Farr indicated that Wendi D.'s neck pain was "most likely coming from her vertebral artery" and recommended a consultation with a vascular specialist. (Tr. 833, 792.) Dr. Farr also recommended a facet injection and an epidural steroid injection for Wendi D.'s lower back pain. (Tr. 832.) However, the vascular specialist Dr. Farr recommended did not accept Wendi D.'s insurance, and as a result she did not pursue treatment. (Tr. 54–55.)

Dr. Dale Van Kirk evaluated Wendi D. on behalf of the Agency on June 3, 2022. (Tr. 611.) His report indicates that Wendi D. continued to experience chronic neck and lower back pain. (*Id.*) Dr. Van Kirk noted Wendi D. had limited range of motion in her neck, and her range of rotation was 0-50 degrees bilaterally. (Tr. 613.)

3

On March 27, 2023, Wendi D. visited the emergency room after a fall resulting in increased lower back pain and an inability to support weight on her right leg. (Tr. 835–36.) A CT scan of her lumbar spine revealed multiple degenerative changes resulting in varying levels of thecal sac effacement and bilateral foraminal encroachment. (Tr. 813–14.) On June 6, 2023, Dr. Grageda noted that Wendi D. had reduced her exercise routine, which previously involved walking for 30 to 45 minutes five times a week, after her back pain worsened from the fall on March 27, 2023. (Tr. 788.) According to the record, Wendi D. can complete daily adaptive living skills and light duty chores independently, although it takes her extra time. (Tr. 622.) She cannot drive due to her limited neck mobility, and requires assistance with many activities like grocery shopping and running errands. (*Id.*) Her activities include sitting in the sun, listening to music, and spending time with her family. (*Id.*)

The record indicates that Wendi D. has a family history of mental illness, and a personal history of mental health issues dating back to her youth, when Wendi D. was hospitalized for a suicide attempt and depression in 1995. (Tr. 619–20.) Wendi D. reported being physically and sexually abused by her stepfather and witnessing and experiencing domestic violence. (Tr. 620.) She also reported a history of drug abuse as a teenager, including the use methamphetamines. (*Id.*) Wendi D. reported receiving some mental health treatment in 1993 and from approximately 1995–1997, and taking psychotropic medication periodically since 1998. (Tr. 619–20.)

On August 17, 2020, APRN Rebecca Adams evaluated Wendi D. and noted worsening depression and anxiety, as well as increased crying. (Tr. 600.) Adams assessed Wendi D. with mixed anxiety and depressive disorder, and prescribed Prozac. (Tr. 601.) On June 5, 2022, psychologist Dr. Pauline Bonilla evaluated Wendi D. on behalf of the Agency. (Tr. 618.) Dr. Bonilla's notes reflect that she reviewed Wendi D.'s mental health history and symptoms. Dr. Bonilla opined that Wendi D. diagnoses included bipolar disorder and unspecified anxiety disorder. (Tr. 622.) She also opined that Wendi D. would be "moderately" limited in several work-related capacities. (Tr. 623.) Dr. Bonilla opined that there was a moderate likelihood that Wendi D. would emotionally deteriorate in a work environment. (*Id.*) On August 5, 2022,

Wendi D.'s primary care physician Dr. Grageda noted that Wendi D.'s anxiety was not controlled. (Tr. 798.) On December 1, 2022, Dr. Grageda noted that Wendi D. was seeing Dr. Becraft every other month for her anxiety and was taking Remeron to treat her condition. (Tr. 792.) She noted that Wendi D. "has been stressed[,] anxiety better today." (*Id.*)

Wendi D.'s application for SSDI benefits was denied upon initial consideration and again on reconsideration. (Tr. 65–79, 368–403.) On December 6, 2023, an ALJ determined that Wendi was not disabled. (Tr. 14–32.) Wendi D. requested review of the ALJ's decision by the Appeals Council, but was denied on September 25, 2024, and the ALJ's decision became final. (Tr. 1–6.)

## II.    STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). However, a district court may not disturb the Social Security Administration's decision unless it contains legal error or is not supported by substantial evidence. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)).

In determining whether the Commissioner's findings are supported by substantial evidence, the district court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). If the evidence could reasonably support more than one conclusion, the Court "may not substitute its judgment for that of the Commissioner" and must uphold the Commissioner's decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted); *see also Burch*, 400 F.3d at 679. "Finally, the court will not reverse an ALJ's decision for harmless error,

which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## III.   ANALYSIS

### A.   Wendi D.'s Physical Limitations

The ALJ found that Wendi D. has cervical and lumbar spondylosis, and that the impairments are severe. (Tr. 19.) The ALJ further found that "the claimant's medically determinable impairments could reasonably be expected to cause her alleged symptoms." (Tr. 25.) The ALJ made no finding of malingering. Despite this, the ALJ concluded that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) As relevant to this Order, the ALJ's residual functional capacity ("RFC") findings did not include any limitations in Wendi D.'s ability to turn her neck (Tr. 27), despite the fact that Wendi D. stated that she had neck pain and limited range of motion, and that turning her head to the left could cause her to faint (*see*, *e.g.*, Tr. 380). In rejecting Wendi D.'s testimony, the ALJ relied on what the ALJ determined to be (i) benign clinical signs; (ii) conservative treatment; and (iii) contradictory evidence of Wendi D.'s daily living. (Tr. 26–27.)

When an ALJ finds impairments reasonably expected to cause claimant's reported symptoms, and there is no evidence of malingering,[2] the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons for the rejection." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996). "[U]nexplained or inadequately explained failure to seek

---

[2] *See Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

treatment or to follow a prescribed course of treatment; and [] the claimant's daily activities" are factors the ALJ may consider. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *accord Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007). This is not an easy requirement to meet to reject the claimant's testimony in this context, as "[t]he clear and convincing standard is the most demanding required in Social Security cases." *Panziera v. Berryhill*, No. 17-cv-02719-LHK, 2018 WL 278623, at *22 (N.D. Cal. Jan. 3, 2018) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014)). "[T]he fact that objective medical evidence does not support the full extent of a claimant's alleged symptoms is not a clear and convincing reason to discount the claimant's testimony." *Id.* As explained below, the ALJ did not have specific, clear, and convincing reasons to reject Wendi D.'s testimony about her neck pain and her limitations in rotating her neck.

### 1. The Clinical Signs and Treatment Are Not a Clear and Convincing Reason to Reject Wendi D.'s Testimony Regarding Her Neck Pain

The ALJ acknowledged that an April 11, 2020 MRI documented multiple protruding herniated cervical disks, and that Wendi D. sought pain management for several months after, including receiving a facet joint injection in her neck. (Tr. 25.) The record then reflects that between August 2020 and February 2022, Wendi D. did not seek medical care or receive treatment. Based on this gap, the ALJ inferred that the facet injection was effective, and that Wendi D. was able to control her symptoms with conservative treatment. (Tr. 25–27.) This inference was not supported by substantial evidence.

First, the medical records indicate that the facet joint injection gave ">80% relief for >24 hours," but that Wendi D. later reported "spikes of pain that are > 6/10." (Tr. 679–81.) Such temporally, limited relief does not indicate that the treatment was "effective" on an ongoing basis. Second, Wendi D. represented that the gap in her medical care was a result of her homelessness and lack of insurance, and the ALJ identified nothing in the record that rebuts this representation. (Tr. 116, 210, 376.) "Disability benefits may not be denied because of the claimant's failure to obtain treatment [s]he cannot obtain for lack of funds." *Orn*, 495 F.3d at

7

638 (quoting *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)); *see also Tanesia M. H. v. Kijakazi*, No. 23-cv-00551, 2023 WL 4745726, at *8 (C.D. Cal. July 25, 2023) (ALJ erred by failing to account for claimant's homelessness when assessing her compliance with treatment). Notably, the gap in Wendi D.'s care is not limited to treatment for neck and back pain, she appears not to have received any medical care at all during this time. *See Orn*, 495 F.3d at 638 (distinguishing a case where claimant has selectively forgone medical care). When Wendi D. re-established care, she had a long list of urgent medical needs. She had a painful lump on her abdomen, elevated and untreated blood pressure, hypertension, untreated anxiety, lower back pain, back muscle spasms, a skin eruption and rash, and localized swelling. (Tr. 809–10.) The long list of untreated symptoms suggests that the gap in her treatment was involuntary, and does not raise the inference that conservative treatment had been effective or that she was not experiencing symptoms.

The ALJ also relies on the fact that Dr. Grageda's notes from Wendi D.'s first visit to re-establish care do not specifically discuss neck pain.[3] (Tr. 809.) However, given the long list of medical needs discussed at the initial office visit, the fact that Dr. Grageda visit notes do not indicate neck pain—and only a note that Wendi D. is experiencing "back muscle spasms"—does not raise the inference that Wendi D. was not experiencing neck pain or limited neck mobility. Wendi D. reported that her neck pain radiated down her back (*see*, *e.g.*, Tr. 872), suggesting that she might not always have described the neck and back pain as separate conditions, and Dr. Grageda may not have noted it separately in her summary. The notes from Wendi D.'s second office visit to Dr. Grageda state that she is experiencing "neck pain" (Tr. 798), and she

---

[3] The various clinical findings indicating Wendi D.'s neck was "supple" (Tr. 598–601 (August 17, 2020 examination), 792 (December 1, 2022 examination), 795 (August 22, 2022 examination), 806 (February 25, 2022 examination), 809 (February 4, 2022 examination)), which the ALJ also relies on (Tr. 26), are not inconsistent with neck pain or inability to rotate the neck. For example, Dr. Van Kirk, who examined Wendi D. on behalf of the Agency, found that her neck was "supple"—noting no nodes or masses—but also indicated pain, tenderness, and limited range of motion in the cervical area. (Tr. 613.) Neither is there inconsistency in Wendi D.'s failure to discuss her neck pain during a telehealth visit related to an acute respiratory infection. (Tr. 786 (July 14, 2023 video call).)

subsequently sought a referral to a specialist for neck pain and limited range of motion (Tr. 796, 832, 859, 573).  Although Wendi D. did not pursue further specialist consultations for her neck pain, the record reflects that this was, again, due to lack of insurance coverage making the further consultation and treatment inaccessible.  (Tr. 54–55.); *see also Lance P. v. Kijakazi*, No. 22-cv-09144-BLF, 2024 WL 819579, at *8 (N.D. Cal. Feb. 27, 2024) ("Plaintiff's inability to afford more aggressive treatment does not justify denial of disability benefits.").[4]

Finally, and most significantly, the Agency's physician Dr. Van Kirk found based on a physical examination conducted on June 3, 2022, that Wendi D. was experiencing "chronic neck … pain" with "restricted range of motion of the cervical spine," and recommended that her "maximum lift/carry/push/pull capacity" and "postural activities" be limited accordingly.  (Tr. 611.)  Two physicians who reviewed the record also found "ev[i]dence of . . . neck pain."  (Tr. 75, 99.)  The ALJ found all three of these opinions "persuasive."  (Tr. 28.)  In sum, the record reflects that when Wendi D. had access to medical care, she consistently reported and sought treatment because she was experiencing radiating neck pain and limited range of motion in her neck.  The Agency's physicians confirmed this finding.  Furthermore, her treating doctor recommended facet injections and referred her for an evaluation by a vascular specialist, though that treatment was not covered by her insurance. (Tr. 833, 792, 54–55.)

### 2. Nor Do Claimant's Daily Living Activities Contradict Her Testimony

The ALJ noted Wendi D.'s testimony that she could not cook and could not drive due to her inability to turn her head, but could "complete her adaptive living skills independently" and "enjoys spending time with her family and enjoys sitting outside in the sun, reading and listening to music."  (Tr. 27.)  The ALJ stated that Wendi D. had reported to her physician in June 2023 that she "walk[ed] 30–40 minutes" five times a week (*id.*), although the record reflects that was a

---

[4] The only medical record that contradicts Wendi D.'s testimony that she experienced limited range of motion in her neck is an emergency room visit on May 19, 2022 for foot pain, where the nurse noted "normal" range of motion in the cervical back.  (Tr. 746, 748.)  But this brief note is, itself, contradicted by Dr. Van Kirk's comprehensive examination less than one month later.  (Tr. 611-615.)  Therefore, it is not persuasive.

prescribed treatment, not Wendi D.'s self-reported activity. (Tr. 788.) In fact, Wendi D. reported that she had decreased her exercise due to her back pain. (*Id*.) The ALJ found that these activities demonstrated a "greater degree of functioning than alleged." (Tr. 27.)

None of the activities on the record contradict Wendi D.'s testimony regarding her neck pain and lack of neck mobility. Sitting in the sun, spending time with family, and walking short distances are activities that an individual who experiences neck pain and limited neck mobility can do. Furthermore, the activities that Wendi Dr. reported she could do are not transferable to the workplace. "The Ninth Circuit has repeatedly cautioned against equating daily activities with the ability to work, recognizing that activities at home do not necessarily transfer to a workplace." *See Raelene C. v. Comm'r of Soc. Sec.*, No. 24-cv-5032, 2024 WL 3717290, at *3 (W.D. Wash. Aug. 8, 2024) (collecting cases). "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Orn*, 495 F.3d at 639.

In sum, the ALJ lacked clear and convincing reasons to discount Wendi D.'s testimony that she experiences chronic neck pain and has limited neck mobility. As discussed *infra* in Section III.C, this error was not harmless, and the case must be remanded for further development of the record and factual findings.

      **B.**    **Wendi D.'s Mental Health Limitations**

The ALJ determined that Wendi D. experienced the mental medically determinable impairments of bipolar and unspecified anxiety disorder, but that the impairments caused only minimal limitations. (Tr. 20.) As relevant to this Order, the ALJ found that Wendi D. had only mild limitations in (a) concentrating, persisting or maintaining pace; (2) adapting or managing herself; (3) understanding, remembering, or applying information, and (4) interacting with others. (*Id.*) The ALJ instructed the Vocational Expert ("VE") to consider only one mental limitation: limited to only understanding, remembering, or carrying out simple instructions. (Tr. 59–60.)

10

In reaching these conclusions, the ALJ disregarded claimant's allegations regarding her mental symptoms and conditions as not fully consistent with the evidence. (Tr. 21.) The ALJ also found unpersuasive the Agency's examining psychologist, Dr. Bonilla's findings. (Tr. 29.) Bonilla diagnosed Wendi D. with bipolar and unspecified anxiety disorder, and opined that Wendi D. was "moderately" limited in her ability to: (a) perform detailed and complex tasks, (b) maintain regular attendance in the workplace, (c) complete a normal workday/work week without interruptions from a psychiatric condition, and (d) deal with stress and changes encountered in the workplace. (Tr. 622–23.) She also opined that the likelihood of Wendi D. emotionally deteriorating in the work environment was moderate. (Tr. 623.) In contrast, the ALJ found persuasive the normal mental status examination findings from various doctors' visits. (Tr. 20.) The ALJ also found persuasive two state Agency psychological consultants who each reviewed the evidence on record without examining Wendi D. and found that Wendi D.'s mental impairments were not severe. (Tr. 29.)

The ALJ lacked substantial evidence to support these conclusions, as further detailed below. First, there is not substantial evidence in the record to discount Wendi D.'s allegations regarding her limitations. Second, the ALJ lacked substantial evidence to discount the persuasiveness of Dr. Bonilla's findings—which were well supported by Wendi D.'s medical history and Dr. Bonilla's observation of Wendi D.—and did not properly assess the persuasiveness of the reviewing physicians. Dr. Bonilla was the only doctor who opined on Wendi D.'s limitations and there is insufficient evidence to support the non-examining doctors' opinions over Dr. Bonilla's. There is no dispute that Dr. Bonilla accurately summarized Wendi D.'s conditions and considered Wendi D.'s current treatment regime, yet she still found Wendi D. had moderate impairments. As a result of these errors, the moderate impairments that Dr. Bonilla found were not communicated to the VE, and, as discussed *infra* in Section III.C, remand is required.

### 1. The Record Supports Wendi D.'s Testimony About Her Impairments

"An ALJ must consider all of the relevant evidence in the record and may not point to

only those portions of the records that bolster [their] findings." *Wiles v. Berryhill*, No. 16-cv-09558, 2017 WL 5186333, at *5 (C.D. Cal. Nov. 8, 2017); *see also L.L. v. Kijakazi*, No. 20-cv-07438-JCS, 2022 WL 2833972, at *12 (N.D. Cal. July 20, 2022) ("[a]n ALJ cannot selectively rely on some medical evidence in the record while ignoring others"). The ALJ's opinion states that "throughout the medical record the claimant indicated that she had no mental issues [] or had temporary increases in symptoms because she had stopped taking Prozac." (Tr. 20.) But the portions of the record cited do not provide substantial evidence of that.

First, the ALJ cites a patient health questionnaire from a June 9, 2020 appointment—prior to the alleged onset of Wendi D.'s disability—at the Institute of Florida Pain Specialists, which is a spine and pain center. (*Id.*; *see also* Tr. 659.) Though Wendi D. marked zero for categories such as trouble concentrating and feeling depressed, the questionnaire asked only about symptoms in the past two weeks. (Tr. 656). In the mental health context, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017. On the same date, Wendi D. also indicated that as a "psychological disease" she suffered from "[d]epression," (Tr. 655) and the treating physician diagnosed a pain disorder with "related psychological factors" (Tr. 648). With respect to her discontinuation of her Prozac prescription, the fact that Wendi D. reported an increase in symptoms during a medical visit and requested to resume medication does establish that the resumption of taking medication remedied the increased symptoms.[5] *See Garrison*, 759 F.3d at 1018. Therefore, these citations do not support that claimant "had no mental issues."

The record shows that, far from denying any mental issues, Wendi D. consistently sought

---

[5] The ALJ's opinion implies that with medication treatment, Wendi D.'s psychological symptoms would resolve. (Tr. 29.) However, Dr. Bonilla noted that Wendi D. was receiving medication treatment, and still found moderate impairments even while on treatment. (Tr. 618–623.)

treatment for mental health impairments during the disability period.  Wendi D.'s mental health history includes a suicide attempt, drug use, mental health treatment, and psychotropic medication use, and her social history includes sexual abuse at the ages of 4 to 7 years old and both childhood and adult experiences with domestic violence.  (Tr. 619–20.)  During the disability period, Wendi D. was seen repeatedly for her mental health issues.  APRN Adams reported Wendi D.'s increase in depression and anxiety symptoms and prescribed her Prozac.  (Tr. 600–01.)  Dr. Grageda referred Wendi D. to psychiatry due to her reports of anxiety and related stressors.  (Tr. 798–99.)  Wendi saw Dr. Becraft every other month for her anxiety and was prescribed Remeron to manage her condition.  (Tr. 792.)  Additionally, the record indicates that Wendi D. also sought online mental health treatment.  (Tr. 371, 374.)  These diagnoses, observations, and the related treatment constitute competent evidence of Wendi D.'s disability, and were not properly credited by the ALJ.  *See Hill v. Astrue*, No. 07-cv-5297, 2008 WL 2782907, at *9 (W.D. Wash. July 15, 2008) (finding that diagnoses and observations of psychiatrists and psychologists constitute competent evidence when mental illness is the basis of a disability claim).

      Furthermore, an individual may suffer from anxiety and bipolar disorders and still have "normal" mental health status examination findings.  *See*, *e.g.*, *Jennifer G. v. Comm'r, Soc. Sec. Admin.*, No. 19-cv-00893, 2021 WL 529788, at *7 (D. Or. Feb. 10, 2021) ("[A] 'normal' mental status exams do not contradict [p]laintiff's testimony as to [their] symptoms of anxiety and depression.").  A mental health status examination that measures cognitive capacity and current emotional state is not screening or diagnosing whether an individual has anxiety or bipolar disorders.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (noting that "observations of cognitive functioning during therapy sessions [did] not contradict [the plaintiff's] reported symptoms of depression and social anxiety").  Nor do mental status examinations capture the broader pattern of an individual's mental health disorder or its effect on the ability to function in a workplace.  *See Lester*, 81 F.3d at 833 (finding that "[o]ccasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability").

Moreover, the mental health status examinations at issue have less weight because they were not conducted by mental health specialists. "[G]reater weight is due to the 'opinion of a specialist about medical issues related to his or her area of specialty.'" *Jeanne R. v. Saul*, No. 19-cv-09809, 2020 WL 4673460, at *7 (C.D. Cal. Aug. 12, 2020) (citing 20 C.F.R. § 404.1527). The pain clinic nurse (Tr. 527–28), emergency department doctor (Tr. 748, 750), and orthopedic surgeon (Tr. 875) upon which the ALJ relies, may "have thought it beyond [their] capacity to inquire or comment about mental health symptoms." *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (finding that an orthopedist's lack of reporting on claimant's mental health impairments "says little about the extent to which [claimant] may in fact have been suffering from such symptoms" because one would not necessarily expect an orthopedist to note them in their report); *see also L.L.*, 2022 WL 2833972, at *12 ("Ultimately, the ALJ erred in determining that isolated observations of unremarkable mental status within non-psychiatric treatment records should discredit the opinions of L.L.'s treating providers.").

Here, Wendi D.'s description of symptoms related to her bipolar and anxiety disorders was improperly rejected despite the support in the record for those allegations.

### 2. The ALJ Lacked Substantial Evidence to Reject the Conclusions of the Agency's Sole Examining Psychologist

The ALJ rejected Agency psychologist Dr. Bonilla's findings as unpersuasive. According to the ALJ, Dr. Bonilla's evaluation "appears to be a snapshot assessment that is heavily reliant on the claimant's subjective complaints. It is not well supported by examination findings or consistent with the overall record." (Tr. 29.) In contrast, the ALJ found the opinions of Drs. Willens and Bucklew, who only examined the record, to be "well supported based on an evaluation of the longitudinal record, and they are consistent with it." (*Id.*)

The Commissioner is required to evaluate the "persuasiveness" of all medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. §§ 404.1520c. Supportability and consistency are considered the most important factors, and the ALJ is required to explicitly address them in

their decision. *Id.* § 404.1520c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *See Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). As with all other determinations made by the ALJ, the ALJ's persuasiveness explanation must be supported by substantial evidence. *See Woods*, 32 F.4th at 792 ("[U]nder the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). The evaluation of medical opinions must be based on a "holistic review of the record." *Ghanim*, 763 F.3d at 1162.

There was not substantial evidence to reject Dr. Bonilla's findings as unpersuasive. There is no indication that Dr. Bonilla's report was a snapshot assessment of Wendi D.'s mental health. Although Dr. Bonilla's report stated that medical records were not available for review, the report contained detailed history of Wendi D.'s symptoms and treatment. (Tr. 618–20.) There is no indication that Dr. Bonilla's description of this history is inconsistent with the record or inaccurate in any way.

Moreover, the fact that Dr. Bonilla's evaluation took into account Wendi D.'s own reporting was not grounds for discrediting her evaluation. Discrediting an opinion solely because it is based in part on self-reported symptoms undermines the evaluation of psychological disorders, as mental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms. *See Ferrando v. Comm'r of Soc. Sec. Admin.*, 449 F. App'x 610, 612 n.2 (9th Cir. 2011) (finding that "[t]o allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders"); *see also Ryan v. Comm'r of Social Sec.*, 528 F.3d 1194, 1200 (9th Cir. 2008) (finding that the ALJ's conclusion that the medical expert relied only on

self-reported symptoms rather than his own observations was unsupported). Here, Dr. Bonilla's findings were based on her own observations as a psychologist, in addition to Wendi D.'s testimony. *See Gartzke v. Colvin*, 129 F. Supp. 3d 1040, 1050 n.9 (D. Or. 2015) ("In this case, the examining psychologists, trained in evaluating and diagnosing claims of mental illness during in-person evaluations, are in fact the most reliable reporters on [claimant's] symptoms and limitations.").

Furthermore, the ALJ lacked substantial evidence to find the opinions of the non-examining physicians, Drs. Willens and Bucklew, to be more persuasive than Dr. Bonilla's opinion. Dr. Willens did not provide specific reasoning to support the conclusion that Wendi D.'s impairments did not result in a significant reduction in mental functioning, other than to note her lack of decompensation, recent hospitalizations, mania, psychosis, or psychotic symptoms. (Tr. 70–71.) Dr. Willens did not explain why those events would be required to find a significant reduction in mental functioning. Likewise, Dr. Bucklew did not provide reasoning as to the conclusion that Wendi D.'s limitations were "not severe," other than to state that she did not have a "clear" history of "specialized diagnosis or treatment." (Tr. 94.) Dr. Bucklew did not discuss the treatment history described by Dr. Bonilla, nor the reasonable explanation of Wendi D.'s recent treatment gap due to homelessness. (*Id.*) Therefore, the ALJ's persuasiveness explanation was not supported by substantial evidence.

### C. The RFC and The VE Hypotheticals Did Not Reflect Wendi D.'s Limitations

The errors described above were not harmless. "The RFC adopted by an ALJ must reflect all the relevant evidence in the case record." *L.L.*, 2022 WL 2833972, at *18. And if a vocational expert's ("VE") "hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Hill v. Astrue,* 698 F.3d 1153, 1162 (9th Cir. 2012) (citation and internal quotation marks omitted).

The ALJ found Wendi D. has the following residual functional capacity ("RFC"):
light work as defined in 20 CFR 404.1567(b) except she can stand

> and walk up to 6 in an 8-hour day; sit without limit; occasionally climb ramps/stairs; occasionally climb ladders/ropes/scaffolds; and occasionally balance, stoop, kneel, crouch, crawl. She can do no work in an extremely cold and/or damp environment.

(Tr. 23–24.) At the hearing, the ALJ also asked the VE to consider someone limited to understanding, remembering, and carrying out simple instructions. (Tr. 60.) The RFC and the simple instructions requirement were the only limitations provided in the instructions to the VE and adopted by the ALJ. As a result, the VE found Wendi D. could perform the occupations of Storage Facility Rental Clerk (DOT # 295.367-026), Mail Clerk (DOT # 209.687-026), Collator Operator (DOT # 208.685-010), and Office Helper (DOT # 239.567-010). (Tr. 31, 61–62.) That conclusion, however, rested on an erroneous assumption that Wendi D. lacked the additional limitations found by Dr. Van Kirk and Dr. Bonilla, and credibly alleged by Wendi D.

First, the RFC does not account for Wendi D.'s neck pain and limited range of motion in her neck. While she is limited to only "occasionally balance, stoop, kneel, crouch, crawl," these limitations do not account for limited cervical rotation. *See Brown v. Colvin*, 15-cv-01997, 2016 WL 2865233, at *3 n. 2 (W.D. Wash. May 17, 2016) ("'Postural limitations' do not refer to cervical rotation and extension difficulties."); *see also Newcomb v. Colvin*, No. 16-cv-5253, 2017 WL 1101372, at *3 (W.D. Wash. Mar. 24, 2017) (ALJ harmfully erred in failing to account for findings of retractions in cervical range of motion). Moreover, cervical range of motion limitations can limit an individual's ability to perform certain jobs, so the error is not harmless. *See, e.g.*, *Oliver v. Comm'r Soc. Sec. Admin.*, 12-cv-02143, 2014 WL 795101, at *3 (D. Or. Feb. 27, 2014) (cervical range of motion limitations "preclude the ability to perform a great number of jobs"); *see also Brown*, 2016 WL 2865233, at *3 ("[p]laintiff's inability to perform repetitive cervical rotation or extension is related to her ability to be employed, and is therefore significant, probative evidence").

The ALJ did ask the VE to add a limitation to *no* turning of the neck, a limitation that was not ultimately adopted in the ALJ's order. (Tr. 60.) The VE testified that this would preclude all the identified jobs. (*Id.*) However, the record does not support that Wendi D. is unable to rotate her neck at all. Therefore, further factual finding is needed regarding the extent to which Wendi

D.'s neck pain and cervical rotation limitations impact the availability of jobs she can perform. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014) (remand for further proceedings is required where there are "outstanding issues that must be resolved before a determination of disability can be made").

The ALJ's instruction that the VE consider someone limited to performing tasks with simple instructions likewise fails to account for Wendi D.'s well-supported mental limitations. Specifically, Dr. Bonilla found that Wendi D. was "moderately" limited in her ability to: (i) perform detailed and complex tasks, (ii) maintain regular attendance in the workplace, (iii) complete a normal workday/work week without interruptions from a psychiatric condition, and (iv) deal with stress and changes encountered in the workplace. (Tr. 622–23.) She also opined that the likelihood of Wendi D. emotionally deteriorating in the work environment was moderate. (Tr. 623.) There is little correlation between the cognitive limitation imposed by the ALJ, and the moderate limitations found by Dr. Bonilla. Therefore, the ALJ's conclusory determination that Dr. Bonilla's assessment "would not change the conclusion" even if persuasive (Tr. 31) cannot be credited.

Wendi D.'s counsel asked the VE to consider the additional limitation of someone who was typically 15% or more off task. (Tr. 60–61.) The VE opined that such a limitation is considered preclusive for most employers in the national economy. (Tr. 61.) However, the existing record does not support that Dr. Bonilla's findings translate to being 15% or more off task. Therefore, further factual findings are needed. *See Treichler*, 775 F.3d at 1106.

### IV.  CONCLUSION

For the forgoing reasons, Wendi D.'s motion for summary judgment is **GRANTED** and the Commissioner's cross-motion for summary judgment is **DENIED**. The Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings.

On remand, consistent with this Order, the ALJ should reevaluate Dr. Bonilla's opinions that Wendi D.'s work would be interrupted by psychological symptoms, reevaluate Dr. Van

Kirk's opinion with respect to Wendi D. neck pain and limited cervical range of motion, reevaluate Wendi D.'s testimony in light of this Order, reassess and determine the RFC, and proceed with steps four and five of the sequential evaluation process with the assistance of a VE as necessary.

**IT IS SO ORDERED.**

Dated: August 14, 2025

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　RITA F. LIN
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge